UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES MAHER, | ) | CASE NO.  1:11-CV-1330 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE MCHARGH |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| | ) | |
| Defendant. | | |

This case is before the Magistrate Judge pursuant to the consent of the parties.  (Doc. 9). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff James Maher's application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence, and therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

I. INTRODUCTION & PROCEDURAL HISTORY

On May 26, 2005, Plaintiff James Maher ("Plaintiff" or "Maher") applied for Supplemental Security Income alleging that he became disabled on April 1, 2005, due to suffering from herniated discs in his neck. (Tr. 49-51, 58).  Plaintiff's application was denied initially and upon reconsideration.  (Tr. 35-36).  Thereafter, Plaintiff requested a hearing to contest the denial of his application for benefits.  (Tr. 44-45).  The Social Security Administration granted Maher's request and scheduled a hearing before an administrative law judge. (Tr. 46-47).

On July 14, 2008, Administrative Law Judge Edmund Round (the "ALJ") convened a hearing to evaluate Plaintiff's application for benefits.  (Tr. 601-38).  Plaintiff appeared with

counsel and testified before the ALJ. (*Id.*). Vocational expert, Mr. Thomas Nimberger (the "VE"), also appeared at the proceeding and testified. (*Id.*). On September 5, 2008, the ALJ issued an unfavorable decision finding that Maher was not disabled. (Tr. 17-29). Following this ruling, Plaintiff sought review of the ALJ's decision from the Appeals Council.[1] (Tr. 13). However, the council denied Maher's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 5-8). Maher now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II. PERSONAL & VOCATIONAL EVIDENCE

Plaintiff, born on July 12, 1953, was 51 years old on the date he applied for benefits and 55 years old on the date of his hearing before the ALJ. (Tr. 606). Accordingly, under Social Security regulations, Maher was considered as a person "closely approaching advanced age" at the time he applied for benefits, and later progressed into the "advanced age" category after he turned 55 years old. *See* 20 C.F.R. §§ 416.963(d)-(e). Maher graduated from high school and has past experience working as a bus driver and train driver. (Tr. 607-08).

Maher worked as a bus driver for the City of Westlake School District from 1974 until 2001. (Tr. 206). Plaintiff informed doctors that one morning in February 2001, he woke up with pain in his neck which continued to worsen in the following days. (*Id.*). Eventually, the pain caused severe weakness in his right arm and Plaintiff felt he was unable to continue working as a bus driver. (*Id.*). He tried to obtain disability benefits from his retirement fund but was denied. (*Id.*). Maher did not retain employment again until early 2003. (Tr. 512). At that time he was hired by the RTA as a bus operator. (*Id.*). Plaintiff maintained that position for five months and

---

[1] Apparently, Plaintiff re-applied for benefits during the appeals process and was granted benefits effective June 24, 2010. (Pl.'s Br. at 1).

then changed positions to start working as a train driver for the RTA. (*Id*.). Maher's position as a train driver required him to "move a steel rod to throw switches to change the tracks periodically[;] [h]e also would need to [use a two-gallon bucket to] fill boxes of sand on the front and back of the train." (*Id*.). Plaintiff stopped working for the RTA on April 22, 2005. (Tr. 559).

### III. MEDICAL EVIDENCE

In February 2001, Plaintiff underwent magnetic resonance imaging ("MRI") testing of his cervical spine. (Tr. 500, 216). The testing revealed minimal bulging at C3-4 with mild foraminal narrowing and a right posterolateral herniation at C6-7 which produced right-sided foraminal stenosis. (Tr. 216). On March 30, 2001, Maher presented to Dr. Charles Choi for neck pain management through epidural steroid injections. (Tr. 372-74). Because this treatment did not fully relieve Maher's pain, his doctor advised him to undergo surgery. (Tr. 238-39). Plaintiff's surgery was scheduled to proceed, but on the day of the operation his doctor "decided it was too risky to perform" due to Plaintiff's "increased risk of air emboli traveling to the brain and causing a stroke." (Tr. 238). The surgery was never rescheduled. (Tr. 512).

On July 11, 2005, Plaintiff presented to Dr. Naomi Waldbaum for a consultative examination. (Tr. 205-08). During her evaluation of Plaintiff, the doctor noted Plaintiff's cervical movements were slightly diminished, though Plaintiff's rotation and lateral flexion appeared functional. (Tr. 206). Dr. Waldbaum also observed Maher to have normal reflexes in his upper extremities "with a trace increase on the right compared to the left", diminished perception to pinprick in his right palm and no discomfort on palpation of the right shoulder. (*Id*.). The physician noted Plaintiff's MRI and EMG results were not available for her to review. (Tr. 207). Overall, Dr. Waldbaum found Maher to be "very functional", but she mentioned that

3

he was "extremely upset about his situation, and [his] inability to get benefits from any source." (*Id.*).  In the end, Dr. Waldbaum concluded Plaintiff could not return to his prior job as a school bus driver, but that he could perform "many different types of sedentary light-type work-related activities."  (Tr. 207-08).

On August 9, 2005, Dr. Walter Holbrook, a state agency physician, reviewed Plaintiff's medical record and evaluated Maher's physical residual functional capacity ("RFC").  (Tr. 217-24).  Dr. Holbrook opined Maher retained the capacity to lift and/or carry 50 pounds occasionally and 25 pounds frequently.  (Tr. 218).  The doctor further ruled Plaintiff could stand, walk or sit for roughly six hours each workday, and maintained an unlimited ability to push, pull and operate hand and/or foot controls.  (*Id.*).  Additionally, Dr. Holbrook found Plaintiff's medical record did not establish the need for any postural, manipulative, visual, communicative or environmental limitations.  (Tr. 219-21).

On November 2, 2005, Dr. Russell DeMicco examined Plaintiff on behalf of the Ohio Public Employees Retirement System.  (Tr. 559-61).  He indicated that the purpose of his examination was to "render an opinion as to whether or not Mr. Maher [wa]s physically and mentally incapacitated for the performance of his duties by a disabling condition, either permanent or presumed permanent."  (Tr. 559).  Dr. DeMicco noted Plaintiff's occupation was that of a train operator for the RTA.  (*Id.*).  Upon physical examination, Dr. DeMicco found Plaintiff's range of motion in his arms and cervical spine to be grossly within functional limits, and the strength in Plaintiff's upper and lower limbs rated 5 out of 5.  (Tr. 560).  However, the doctor noted Maher's complaints of pain at end points of all ranges of motion and with palpation of the cervical, paraspinal and shoulder girdle musculature.  (*Id.*).  After reviewing Plaintiff's job

duties as a train conductor, Dr. DeMicco concluded Maher was "unable to perform his duties as [Dr. DeMicco] underst[oo]d them." (*Id*.).

In December 2005, state agency physician, Dr. James Gahman, conducted a review of Plaintiff's medical history and completed a report containing his assessment of Plaintiff's physical RFC. (Tr. 275-82). Just as Dr. Holbrook concluded, Dr. Gahman opined Plaintiff maintained the ability to lift and/or carry up to 50 pounds occasionally and 25 pounds frequently, and to stand, walk or sit for approximately six hours per workday. (Tr. 276). Dr. Gahman also ruled Plaintiff had no problems with pushing, pulling or operating hand or foot controls. (*Id*.). However, Dr. Gahman indicated that Plaintiff's work should never involve ladders, ropes or scaffolds, or require Plaintiff to crawl. (Tr. 277). In addition, the physician noted Maher's work should only occasionally involve stooping, crouching, reaching overhead bilaterally or driving. (Tr. 277-78). Finally, Dr. Gahman recommended Plaintiff avoid all exposure to hazards. (Tr. 279).

On March 17, 2006, Dr. Jeffrey Blood examined Plaintiff and reviewed Plaintiff's medical files in order to conduct an independent evaluation of Maher for the School Employees Retirement System. (Tr. 512-14). Plaintiff informed the doctor that he experienced problems related to his cervical spine causing pain in the right side of his neck to radiate down to his right arm. (Tr. 512-13). Maher also complained to Dr. Blood about arthritis in his hands and knees. (Tr. 513). Upon examination, Dr. Blood noted Maher had "decreased sensation over [his] biceps muscles bilaterally and the ulnar aspect of both forearms and in his thumbs", however the doctor concluded Maher "otherwise ha[d] normal sensation in a spotty distribution in the upper limbs." (*Id*.). Neither did Maher exhibit any weakness on manual muscle testing of his arms or of the rotator cuff mechanism on either side of his body. (*Id*.). Dr. Blood diagnosed Maher with

5

degenerative disc disease with osteophytes, but highlighted that he saw "no clinical evidence of cervical radiculopathy." (Tr. 514). Dr. Blood acknowledged Plaintiff's subjective complaints of pain and various imaging studies showing degenerative changes, but opined he "d[id] not [c]learly see a reason [why Plaintiff] would not be able to continue his work activities . . . [or] resume his jobs." (*Id.*).

On April 13, 2006, Dr. Timothy Fallon penned a letter assessing Plaintiff's disabled status. (Tr. 500). In the letter, Dr. Fallon indicated he had reviewed the evaluations prepared by Drs. Waldbaum and DeMicco prior to issuing his opinion. (*Id.*). Dr. Fallon also reviewed Dr. Blood's findings, which revealed osteophytic encroachment at C6-7 on the right and C6-7 and C5-6 on the left. (*Id.*). Based upon his review of this evidence, Dr. Fallon opined that Maher would likely have a "restricted range of motion" and would be unable to continue working as a train operator. (*Id.*).

On March 2, 2007, Plaintiff presented to Dr. Eugene Lin with complaints of neck pain, right arm pain and numbness in his fingers. (Tr. 321-23). Dr. Lin performed a series of tests on Plaintiff to measure his range of motion and manual muscle strength. (Tr. 322). The physician observed that Plaintiff was "[a]ble to lift and carry up to 35lb box [sic] multiple times." (*Id.*). Dr. Lin also noted Plaintiff experienced abnormal sensation, but further noted Maher experienced an "inconsistent dermatomal distribution of sensation loss". (*Id.*). Dr. Lin prescribed Maher medication for his neuropathic pain and instructed him to begin physical therapy for his back and neck. (*Id.*).

Finally, sometime in or around May 2007, Dr. Lin completed an "Attending Physician Report" for the School Employees Retirement System. (Tr. 575-76). In the report, Dr. Lin stated Plaintiff had been under his care since March 2007. (Tr. 575). Dr. Lin opined that as of

February 2005, Plaintiff had become physically and/or mentally unable to perform his prior position as a school employee for at least the next 12 months. (Tr. 575). The physician noted Plaintiff's disabled status stemmed from cervical radiculitis and carpal tunnel syndrome. (Tr. 576).

## IV.  ALJ'S DECISION

The ALJ applied the standard five-step sequential analysis[2] in evaluating Maher's application for benefits. At step one of the evaluation process, the ALJ found Maher had not engaged in substantial gainful activity since the day he applied for benefits on May 26, 2005. (Tr. 19). At step two, the ALJ held Plaintiff suffered from the following severe impairments: foraminal stenosis of the cervical spine at C6-C7, bilateral median neuropathy at or across the

---

[2]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability". *See* 20 C.F.R. § 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

wrist, an adjustment disorder and a personality disorder with histrionic features. (Tr. 19-20). But, at step three, the ALJ ruled none of these impairments, individually or combined, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21-23). Before moving to the next step, the ALJ assessed Maher's RFC to work. (Tr. 23-27). The ALJ concluded Maher retained the ability to perform a range of medium work. (Tr. 23). Specifically, the ALJ found that Plaintiff could lift and/or carry up to 50 pounds occasionally and up to 25 pounds frequently. (*Id.*). However, the ALJ restricted Maher to work involving only limited and superficial interaction with supervisors and no interaction with the public. (*Id.*). Accordingly, at step four, the ALJ ruled Maher could not return to his prior work as a bus or train driver because these positions did not align with Maher's current RFC. (Tr. 28). Yet, at the final step of the sequential analysis, the ALJ concluded there were other jobs, existing in substantial numbers in the national economy, which Maher could perform, such as that of a kitchen helper, housekeeper or cleaner. (Tr. 28-29).

## V. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial

evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VII. ANALYSIS

Maher attacked the ALJ's ruling on two grounds. First, Plaintiff contends the ALJ's decision is erroneous because the ALJ failed to utilize testimony from a medical expert to ascertain Maher's RFC. Second, Maher claims the ALJ failed to properly apply the Medical-Vocational guidelines at step five of the sequential analysis to determine whether there was work existing which Plaintiff could perform. Neither of these arguments is well-taken.

1. Medical Expert Testimony

Plaintiff maintains the ALJ committed reversible error by failing to request a medical expert to testify during his hearing. Maher contends the ALJ should have retained a medical expert to assist the ALJ with understanding the medical evidence in the record and evaluating Plaintiff's RFC, which Plaintiff contends the ALJ erroneously assessed as retaining the ability to perform medium level exertional work. Maher argues the ALJ's RFC failed to account for Plaintiff's: 1) sensory loss in his hands; 2) limited range of motion in his upper extremities; and 3) inability to stoop, couch, reach in all directions, deal with hazards, or climb ladders, ropes or scaffolds. Plaintiff claims all of these limitations were supported by the medical evidence in the record, and would have prevented Plaintiff from being able to perform the positions identified by the VE, upon whose testimony the ALJ relied at step five of the sequential analysis.

The regulations governing Social Security disability claims specify that "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (*citing* 20 C.F.R. §§ 404.1517, 416.917). Thus, there is no mandate requiring an ALJ to solicit such evidence. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009) ("20 C.F.R. §§ 404.1527(f)(2)(iii) and 416.927(f)(2)(iii) provide discretion rather than a mandate to the ALJ to decide whether to solicit medical expert testimony…").[3] Ultimately, the ALJ is charged with the duty of evaluating the medical evidence on record and determining the claimant's RFC. *See* 20 C.F.R. § 404.1546(c). Although an ALJ may not substitute his/her opinion for that of a physician, "an

---

[3] Effective March 26, 2012, sections 404.1527 and 416.927 of the Code of Federal Regulations were amended. Paragraph (c) was removed and paragraphs (d) through (f) of each section were redesignated as paragraphs (c) through (e). 77 F.R. 10651-01, 2011 WL 7404303.

ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).

Plaintiff's claim that the ALJ erred by failing to seek testimony from a ME is unavailing. Maher contends the ALJ should not have found him to be capable of performing work at the medium exertional level because Plaintiff alleges all of the doctors who physically examined him concluded that he was limited to sedentary or light work. According to Plaintiff, the following doctors reached this conclusion: Drs. Waldbaum, Fallon, DeMicco and Lin. However, Plaintiff's contention is in error.

Though Plaintiff contends all of these doctors limited him to sedentary or light work, they did not. Both Dr. Fallon and Dr. DeMicco merely indicated that Maher could not return to his prior position as a train operator. But, neither doctor restricted Plaintiff to sedentary or light duties. Similarly, Dr. Lin's finding did not on its face limit Maher to sedentary or light tasks. Instead, the report explicitly indicated that Plaintiff was unable to "perform the duty for which [he] w[as] formerly responsible as a school employee" – that of a school bus driver. (Tr. 575). Moreover, the ALJ discounted Dr. Lin's finding because his statement that Maher was disabled was not entitled to deference as it concerned an issue reserved to the Commissioner to determine. (Tr. 27) (*citing* 20 C.F.R. § 416.927(e)(1) & (3))[4]; *see Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492 (6th Cir. 2010). The ALJ further highlighted that Dr. Lin's opinion appeared to be based on Plaintiff's statements rather than on Dr. Lin's independent objective or subjective

---

[4] Now listed at 20 C.F.R. § 416.927(d)(1) and (3). *See* n. 3 *supra*. Although the ALJ cited to section "(e)(1)(3)", it is evident that the ALJ intended to cite sub-sections (e)(1) and (e)(3), as there was no sub-section "(e)(1)(3)" at the time the ALJ's opinion was written.

11

medical findings. Accordingly, Plaintiff's descriptions of these doctors' opinions are not accurate.

In fact, Dr. Waldbaum was the only doctor who recommended Maher's work be limited to sedentary or light activities. But, the ALJ stated sufficient grounds for rejecting the physician's conclusion. The ALJ explained that Dr. Waldbaum's recommendation was inconsistent with her examination of Plaintiff, during which the doctor observed Plaintiff retained normal muscle strength and appeared to be "very functional". (Tr. 27). Therefore, the ALJ did not assign any probative weight to Dr. Waldbaum's findings as they were inconsistent with the physician's clinical findings. The ALJ's reasons for rejecting Dr. Waldbaum's opinion are supported by the record. As a result, Dr. Waldbaum's opinion alone was not sufficient to demonstrate that Plaintiff was limited to sedentary or light work.

Next, Plaintiff argues that the ALJ's RFC assessment, finding Plaintiff capable of performing medium level work, was not supported by the record because the ALJ placed undue significance on Plaintiff's upper arm strength, and failed to account for Maher's limited range of motion and bilateral sensory loss in his hands. However, Plaintiff's argument is not borne out by the record.

The ALJ acknowledged Plaintiff's sensory loss problems and limited range of motion which were detailed by several of the physicians in the record. For instance, the ALJ highlighted Dr. Waldbaum's findings showing Plaintiff had diminished perception to pinprick in his hands and mild discomfort with rotation and flexion of his shoulder. But, the ALJ also noted Dr. DeMicco's findings which showed Plaintiff demonstrated an active range of motion in his upper limbs and cervical spine, and retained full muscle strength in his upper and lower extremities. Additionally, the ALJ's opinion made reference to Dr. Blood's opinion, noting that the doctor

found Plaintiff's reported sensory symptoms to be "rather spotty". (Tr. 25). The ALJ continued, noting Dr. Blood observed Maher to display normal flexion on range of motion of his neck, and did not find "evidence of weakness on manual muscle testing [or] evidence of measureable atrophy in [Maher's] upper extremities." (Tr. 25). The ALJ also noted 2007 test results which did not show evidence of left or right cervical radiculopathy or myelopathy. Thus, the ALJ reasonably acknowledged Plaintiff's documented history of sensory complaints and problems with range of motion.

Yet, the ALJ's acknowledgment of these problems did not compel him to limit Maher to sedentary work. Dr. Blood noted Maher's reported sensory symptoms, but nonetheless concluded he did not see any reason why Plaintiff would not be able to continue to work. Similarly, both Dr. DeMicco and Dr. Fallon discussed Plaintiff's problems with range of motion and cervical radiculopathy, but neither doctor suggested that Plaintiff be restricted to sedentary duties. Instead, both simply indicated Plaintiff was unable to return to his position as a train operator. Dr. Waldbaum was the only physician who recommended that Plaintiff's perform "sedentary light-type" work, (Tr. 207), but as previously discussed, the ALJ supplied a reasonable basis for rejecting this finding.

Next, Plaintiff argues the ALJ erred because his RFC assessment did not incorporate the postural and environmental limitations announced by Dr. James Gahman. Maher contends the ALJ erred when he assigned "full probative weight" to Dr. Gahman's report, but omitted these limitations announced by Dr. Gahman from his RFC assessment. Plaintiff's argument here is also flawed.

The ALJ did not assign full probative weight to Dr. Gahman's findings. (Tr. 27). The ALJ's opinion expressly states he assigned full weight to state agency physician, Dr. Holbrook's

opinion dated August 9, 2005. (*Id.*). Dr. Holbrook did not recommend any postural or environmental restrictions be placed on Maher's work. During his discussion of Dr. Holbrook's findings, the ALJ cited Dr. Holbrook's opinion itself and referenced the opinion of state agency physician, Dr. Gahman. Notably, the ALJ prefaced his citation of Dr. Gahman's report with the common legal introductory signal of "*see also*". The Bluebook explains that the signal "*see also*" indicates that the cited authority "constitutes additional source material that supports the proposition." THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION (Columbia Law Review Ass'n et al. eds., 19th ed. 2010). In other words, the ALJ's citation of Dr. Gahman's report was intended to lend support to Dr. Holbrook's finding that Plaintiff could perform medium work. The ALJ's reference to Dr. Gahman's findings is logical because Dr. Gahman also concluded Plaintiff retained the ability to perform tasks at the medium exertional level. However, the ALJ did not explicitly assign any specific weight to Dr. Gahman's findings. Thus, Plaintiff's contention that the ALJ attributed full weight to Dr. Gahman's opinion is a misstatement of the record. Because the ALJ did not indicate that he fully credited Dr. Gahman's opinion, particularly the postural and environmental restrictions the physician recommended, Plaintiff's argument is moot. The ALJ assigned full weight to Dr. Holbrook's findings and the ALJ's RFC properly accounted for this doctor's opinion.

Here, the record before the ALJ was complete enough for the ALJ to reasonably assess Maher as retaining the RFC to perform work at the medium exertion level. As noted above, both Drs. Holbrook and Gahman found Plaintiff could perform medium level work. Furthermore, during Plaintiff's physical examination on March 2, 2007, his doctor indicated he was able to lift and carry up to 35 pounds multiple times. The ALJ was also privy to the records from Drs. Fallon and DeMicco, which found Plaintiff unable to return to his position as a train operator, but

did not otherwise restrict Plaintiff from other medium level positions. Though the opinions from Drs. Lin and Waldbaum suggest that Plaintiff may have been more limited, it was the ALJ's responsibility to weigh the medical opinion evidence and determine Plaintiff's RFC. 20 C.F.R. § 416.927(d)(2). Though it may have been Plaintiff's desire for the ALJ to seek expert testimony, the Court finds that the record was not so lacking that the ALJ's failure to seek such constituted error. The Court finds there was adequate evidence before the ALJ to enable him to determine Plaintiff's RFC without seeking the testimony of a medical expert.

Lastly, Plaintiff's reliance upon *Wise v. Astrue*, No. 2:09-cv-355, 2010 WL 3075184 (S.D.Ohio Aug. 4, 2010), is unavailing. The claimant in *Wise* suffered from depression. *Wise*, 2010 WL 3075184, at *1. Without hearing testimony from a medical expert, the ALJ concluded that the claimant's medical record did not support a finding of severe depression, and therefore denied the claimant's application for benefits. *Id*. at *2-3. However, on judicial review, the court found that the ALJ had not properly characterized the treatment notes of the claimant's treating physician, in which the court noted the doctor had "describe[ed] symptoms indicative of depression" which the ALJ "appear[ed] to not have recognized." *Id*. at *2-3. Accordingly, the court ruled that testimony from a medical expert would have assisted the ALJ in evaluating the medical evidence. *Id*. at *3. But, the instant case can be easily distinguished from *Wise*. The ALJ here did not mischaracterize any of the medical evidence in the present case. The ALJ acknowledged both the evidence that supported Plaintiff's claim and that which detracted from Maher's claim. Though Plaintiff disagrees with the ALJ's overall decision, he failed to successfully identify any evidence which the ALJ misconstrued or took out of context. Thus, the ruling in *Wise* does not support Plaintiff's request for remand.

2. Application of Medical-Vocational Guidelines

Finally, Maher asserts the ALJ should have deemed him disabled by operation of Medical-Vocational Rule 201.14 or 202.06. Medical-Vocational Rule 201.14 directs the adjudicator to find a claimant disabled if the claimant falls within the "closely approaching advanced age" category and is limited to sedentary work. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.14. On the other hand, Medical-Vocational Rule 202.06 directs a finding of disabled if the claimant falls within the "advanced age" category and is limited to light work. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.06. Plaintiff fell within the "closely approaching advanced age" grouping as of his onset date, and progressed into the "advanced age" category by the time of his hearing. However, since the Court has already concluded that the ALJ's RFC assessment, finding Maher capable of performing medium work, was supported by the record, Plaintiff's argument is moot. Plaintiff's ability to perform medium level work necessarily precludes application of either of the Medical-Vocation Rules in question.

VIII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: August 8, 2012.